

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-5-2008

# Davis v. Newark

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4806

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Davis v. Newark" (2008). *2008 Decisions.* Paper 716.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/716

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4806
_____

SHARON DAVIS,

Appellant

v.

CITY OF NEWARK; CITY OF NEWARK POLICE DEPARTMENT;
ANTHONY F AMBROSE, III, individually and under color
of State law as Police Director for the City of Newark;
IRVING BRADLEY, JR., individually and under color of State
law as Police Chief for the City of Newark;
LIEUTENANT JOHN SCOTT-BEY, individually and under color
of State law as Captain for the City of Newark Police Department;
ADOLPH VASQUEZ, individually and under color of State
law as Sergeant for the City of  Newark Police Department;
JOHN AND JANE DOES 1-99, Fictitious names;
XYZ CORPORATIONS 1-10; municipal or governmental entries and their
supervisors, agents and employees

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 04-cv-05317)
District Judge:  Hon. Garrett E. Brown, Jr.

_____

Submitted under Third Circuit LAR 34.1 (a)
on January 18, 2008

Before:  SCIRICA, Chief Judge, BARRY and ROTH, Circuit Judges

O P I N I O N

**ROTH**, Circuit Judge:

Sharon Davis appeals the dismissal of her claims alleging racial discrimination and impermissible retaliation under Title VII and the New Jersey Law Against Discrimination. The District Court dismissed her claims pursuant to Federal Rule of Civil Procedure 12(b)(6). We will affirm the dismissal of Davis's claims based on a hostile work environment and racial discrimination. We will reverse the dismissal of Davis's claim based on impermissible retaliation, and remand for further proceedings.

**I. BACKGROUND**

Davis filed a seven count complaint on October 28, 2004. Count One alleges race discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964; Count Two alleges retaliation for complaints of race discrimination in violation of Title VII; Counts Three, Four, and Five were brought pursuant to 42 U.S.C. § 1983; Count Six alleges race discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.; and Count Seven alleges retaliation in violation of the NJLAD. The District Court dismissed Counts One, Two, Six, and Seven on September 6, 2006, pursuant to a Rule 12(b)(6) motion. Davis voluntarily dismissed the remaining Counts Three, Four,

and Five on October 13, 2006.[1]  Davis now appeals the dismissal of Counts One, Two, Six, and Seven.

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  Because this is an appeal from a dismissal pursuant to rule 12(b)(6), our review is plenary.  *Tyler v. Armstrong*, 365 F.3d 204, 208 (3d Cir. 2004).  In considering a motion for dismissal under 12(b)(6), we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Davis began her full time employment with the City of Newark as a police officer on September 30, 1994.  She alleges that between November 1994 and April of 2004, various events occurred that she felt were a result of racial discrimination and retaliation for previous complaints of discrimination.  Specifically, she alleges that (1) partners tended to be of like race and national origin; (2) she was required to drive the police vehicle at all times during her training; (3) she was given a warning for excessive sick leave that was in error; (4) she was reprimanded after being involved in a dispute with a radio dispatcher; (5) she observed that white, male officers who did not show up for work would have others cover for them by writing in the blotter that they were on-duty; (6) after filing a report that another officer had

---

[1]Davis claims this dismissal was agreed to by her previous counsel without her knowledge.  The issue is moot, as she now elects to stand on the dismissal of those claims and pursue the instant appeal.

3

referred to her as "a pain in my balls," she was investigated for improper use of a city gas card, pled guilty, and was issued a written reprimand; (7) she was investigated on charges of insubordination and theft and was found not guilty of insubordination while the accusation of theft was recanted; (8) after reporting another officer for a violation of police department regulations, a tire on her car was slashed and the incident was not investigated; (9) after she reported smoking in the precinct and fellow officers discovered she was the source of the complaint, they only spoke Spanish around her; (10) when she took a sick day on New Year's Eve, a city doctor came to her home to verify her illness; (11) a fellow officer requested to be removed from the squad because of her presence, but later apologized; and (12) Davis was transferred from her squad, she believes in retaliation for an earlier complaint about her commanding officer having described her as a "pain in the ass."

In addition, Davis alleges that on January 14, 2004, Davis submitted a report regarding offensive comments made about a fellow officer, that no remedial action was taken because of the report, and that she was subsequently subjected to retaliation by a higher ranking officer as he consistently sent Davis to stand duty at the hospital to guard prisoners, which is generally considered to be an extremely poor detail.

On April 2, 2004, Davis submitted a complaint to the Equal Employment Opportunity Commission and the New Jersey Division on Civil Rights regarding the retaliation and race discrimination that she had allegedly suffered. Thereafter, she submitted reports regarding discrimination, retaliation against her and preferential treatment of others on April 11, 2004,

4

April 30, 2004, and September 26, 2004. On October 4, 2004, Davis was called to a meeting to discuss her reports and was specifically questioned regarding her failure to follow the chain of command. She contends that discriminatory and retaliatory actions continue to occur against her.

## II.  DISCUSSION

### A.  Hostile Work Environment

This Court has articulated five factors that must be proven in order to establish the existence of an actionable hostile work environment under Title VII.  To do so, Davis must prove: (1) that she suffered intentional discrimination because of her race; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected her; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability.  *See Weston v. Pennsylvania*, 251 F.3d 420, 425-26 (3d Cir. 2001), *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

We must consider the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). Factors we must look at include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

5

unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Here, Davis fails the first two prongs of the test described above. It is not clear that any of the incidents alleged in the complaint were motivated by racial discrimination and, even assuming that they were, they do not rise to the level of severe and pervasive harassment.

While it is not necessary for a Title VII defendant to use words that overtly implicate racial animus to create a hostile work environment, comments that cannot be reasonably construed as invoking any racial feeling do not support Title VII liability. The only directly race conscious behavior alleged by Davis is the tacit consent to the grouping of officers by race and national origin when assigning partners, an action that is not in and of itself discriminatory. The remaining incidents described by Davis implicate her personality, temperament, and the other various factors that tend to cause favor or disfavor between co-workers rather than racial issues. Davis cannot sustain a claim simply by asserting an event and then asserting that it was motivated by racial bias.

Even assuming that the alleged incidents were racially motivated, the frequency and severity of the conduct is not sufficient to sustain a hostile work environment claim. The frequency of the conduct was minimal, as the events alleged to have occurred took place over a period of more than ten years. In addition, Davis has not claimed that any of the alleged

6

events involved physical threats or humiliations, or unreasonably interfered with her work performance.

For the foregoing reasons, the dismissal of Davis's hostile work environment claim under Title VII was proper.

As to Davis's claims under NJLAD, this Court has held that the elements for a hostile work environment claim under NJLAD "closely resemble the first four elements of [a] Title VII hostile work environment claim." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). Accordingly, the reasoning above regarding Title VII liability applies to NJLAD liability as well, and Davis's failure to show racial motivation or severe and pervasive discrimination on the part of the police department mandated the dismissal of her claim.

**B. Racial Discrimination**

Discrimination claims brought under Title VII and NJLAD must be analyzed according to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim"). The framework consists of three steps. First, a plaintiff must present sufficient evidence to support a prima facie case of discrimination. *Hicks*, 509 U.S. at 506. Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who

7

must articulate a legitimate, nondiscriminatory reason for its actions. *Hicks*, 509 U.S. at 506-07. If the defendant satisfies this burden, the reviewing court proceeds to the third step. At this stage, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not the true reason for the employment decision, but was merely a pretext for discrimination. *Hicks*, 509 U.S. at 507-08. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

To establish a prima facie case of discrimination, the plaintiff must prove that she belongs to a protected class; that she was qualified for the position; that she suffered an adverse employment action; and the adverse action occurred under circumstances that give rise to an inference of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-12 (3d Cir. 1999); *See Burdine*, 450 U.S. at 253-54 & n. 6, *McDonnell Douglas*, 411 U.S. at 802.

In order to give rise to a claim of racial discrimination under Title VII, an adverse employment action must be "sufficiently severe as to alter the employee's 'compensation, terms, conditions, or privileges of employment,' or to 'deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee.'" *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296-97 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (quoting 42 U.S.C. § 2000e-2(a)(1) and (2)). Not every "insult, slight, or

unpleasantness gives rise to a valid Title VII claim." *Id.* at 1297.

Here, Davis has failed to make a prima facie case of discrimination because she has not demonstrated that she suffered an adverse employment action. None of the incidents that Davis alleges to have been racially motivated were sufficiently severe as to alter her "compensation, terms, conditions, or privileges of employment."

Even assuming *arguendo* that the alleged incidents were sufficiently severe as to constitute adverse employment actions, there is nothing within the surrounding circumstances that give rise to an inference of racial discrimination. Procedural errors were administratively addressed, employees were visited to confirm sickness during the New Year's Eve shift, fellow co-workers fraudulently assisted other co-workers with shift attendances, and negative but non-discriminatory comments were made. None of these events provide any inference of racial discrimination.

### C. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir.1995). Once a prima facie case is established, "the familiar McDonnell Douglas approach applies." *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

9

In a claim of retaliation, the standard required to show an "adverse employment action" differs from the standard used for claims of discrimination. *Id.* at 341 (3d Cir. 2006). Here, an "adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).

The District Court applied the pre-*Burlington* standard for determining when an adverse employment action takes place, requiring that an act "alter[] the employee's compensation, terms, conditions, or privileges of employment, deprive[] him or her of employment opportunities, or adversely affect[] his or her status as an employee" to be an adverse employment action. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (internal quotation marks omitted), *abrogated by Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006). *Burlington*, which was decided shortly before the District Court issued its opinion in this case, resolved a circuit split on this issue and replaced the standard described in *Robinson*. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 60-61, 67-68; *Moore*, 461 F.3d at 341-42. Because the question of whether Davis alleged an adverse employment action is central to her retaliation claim, we will remand this case for a determination of the issue in the first instance by the District Court.

## III. <u>CONCLUSION</u>

We will affirm the District Court's order dismissing Counts One and Six of Davis's complaint. The voluntary dismissal of Counts Three, Four, and Five is not before us, as

10

Davis has elected to stand on her dismissal.  We will vacate the order dismissing Counts Two

and Seven and remand this case for further proceedings consistent with this opinion, applying

the standard established in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)

and *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006).