**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 10-3475

————————

GOVERNMENT OF THE VIRGIN ISLANDS

v.

PETER BELLOT,
                        Appellant

————————

On Appeal from the District Court
of the Virgin Islands – Appellate Division
(D. C. No. 3-03-cr-00130-001)
District Judge:  Honorable Raymond L. Finch
District Judge:  Honorable Thomas K. Moore
Superior Court:  Honorable Edgar D. Ross

————————

Submitted under Third Circuit L.A.R. 34.1(a)
on December 8, 2011

Before:  FISHER, GREENAWAY, JR. and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 30, 2012 )

————————

O P I N I O N

ROTH, Circuit Judge:

Peter Bellot appeals the order of the Appellate Division of the District Court of the

Virgin Islands affirming his judgment of conviction in the Virgin Islands Superior Court[1]

for aggravated rape and unlawful sexual contact in the first degree.  For the following

reasons, we will affirm the order of the District Court.

## I. Background

We write exclusively for the parties, who are familiar with the factual context and

legal history of this case.  Therefore, we will set forth only those facts necessary to our

analysis.

For several years, Bellot lived and worked as a mechanic at Alester Canonier's

auto body garage.  During this period he became acquainted with Canonier's three young

children.  Beginning around November 2001 and lasting until May 2002, Bellot touched

A.C., Canonier's nine year old daughter, three times.  On the first two occasions Bellot

placed his hand on A.C.'s  thigh, which made her feel uncomfortable.  The third incident

occurred in May when A.C. was doing homework in the office of her father's garage.

While alone in the office with A.C., Bellot "pulled across" her panties and inserted his

fingers into her vagina.  This caused A.C. to bleed, and she yelled in pain.  Upon hearing

A.C. scream, Canonier investigated and asked her what happened.  A.C. responded

---

[1] At the time of Bellot's convictions the Superior Court was known as the
Territorial Court of the Virgin Islands.  For ease of reference, we identify the tribunal
with its current name.

"nothing." Approximately two months later, A.C., while asleep with her brother in the backseat of her mother's car, suddenly exclaimed "No. Stop. You're hurting me." After A.C.'s mother awoke her and asked what was wrong, A.C. informed her about Bellot's sexual assault. A.C. was then taken to the hospital, and a medical examination subsequently revealed that she had no hymen. When questioned about the incident by hospital staff, A.C. indicated that Bellot touched her "a few months ago." Later, she clarified her previous statement and declared that the incident occurred "2 months ago."

After a jury trial, Bellot was found guilty of one count of aggravated rape in the first degree and one count of unlawful sexual contact in the first degree. He filed a motion for judgment of acquittal, which the Superior Court denied. Bellot appealed, and the Appellate Division of the District Court of the Virgin Islands upheld his conviction. Bellot appeals the District Court's decision.

## II. Discussion

We have jurisdiction pursuant to 48 U.S.C. § 1613a(c), and, in our review, use "the same standard of review applied by the first appellate tribunal." *Tyler v. Armstrong,* 365 F.3d 204, 208 (3d Cir. 2004).

### A. Sufficiency of the Evidence

We exercise plenary review, *United States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009), and "apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent,* 149 F.3d 180, 187 (3d Cir. 1998). "In exercising that review, we must interpret the evidence in the light most favorable to the government as the verdict winner, and do not weigh evidence or

3

determine the credibility of witnesses in making our determination." *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008) (internal quotations marks and citations omitted).

A defendant may be convicted for unlawful sexual contact in the first degree, 14 V.I.C. § 1708, when he (1) engages in sexual contact (2) with an individual under the age of thirteen (3) that was not his spouse. "Sexual contact" is defined as "the intentional touching of a person's intimate parts, whether directly or through clothing, to arouse or to gratify the sexual desires of any person. The term 'intimate parts' means the primary genital area, groin, inner thighs, buttocks, or breasts of a person." 14 V.I.C. § 1699(c). To convict a defendant of aggravated rape, 14 V.I.C. § 1700, the government must prove that he (1) engaged in sexual intercourse (2) with an individual under the age of thirteen (3) that was not his spouse. "Sexual intercourse" is defined as "vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examination." 14 V.I.C. § 1699(d).

Bellot does not dispute that A.C. was under the age of 13, that she was not his spouse, and that he engaged in sexual contact and intercourse with her by inserting his finger into her vagina. Rather, he contends that there was insufficient evidence to support his conviction because the government failed to prove that the assault occurred between April 27, 2002 and July 15, 2002, the dates alleged in the Information. This argument is without merit. Upon her arrival at the hospital in July 2002, A.C. informed the triage nurses that the sexual assault occurred "a few months ago." Later, during her physical examination, A.C. specified that the assault occurred "two months ago." Although A.C. could not recall at trial the specific date of the assault, these two statements provide

4

sufficient evidence for the jury to conclude that Bellot sexually assaulted A.C. in May 2002. *See United States v. Cothran*, 286 F.3d 173, 176 (3d Cir. 2002).

### B.  Batson Challenge

Bellot also contends that the government improperly utilized its peremptory challenges to exclude two potential jurors from Dominica, the island where Bellot was born.  We have held that a defendant forfeits his claim under *Batson v. Kentucky*, 476 U.S. 79 (1986) if he fails to object during jury selection to the prosecutor's use of peremptory challenges. *Gov't of the Virgin Islands v. Forte*, 806 F.2d 73, 75-76 (3d Cir. 1986); *see Lewis v. Horn*, 581 F.3d 92, 101-02 (3d Cir. 2009).  According to the record, Bellot only raised a *Batson* objection during his sentencing hearing, long after empanelment of the jury and dismissal of the venire.  There is no transcript of any *Batson* challenge during the jury *voir dire*.  To the extent that *Batson* may have been discussed during *voir dire*, there is no record of it.  We, therefore, review for plain error. *Forte*, 806 F.2d at 76.

The record of any use by the government of peremptory challenges here does not indicate plain error.  There is no evidence that Bellot's substantial rights were affected or that the fundamental fairness of his trial was compromised.  *See Forte*, 806 F.2d at 76. Although none of the jurors shared the same ethnicity as Bellot, the jury was composed of individuals from several Caribbean islands.  Nothing during *voir dire* suggested any possibility of any ethnic bias among the jurors.  Moreover, the Superior Court extensively questioned the venire members on any preconceived prejudices that could have adversely

5

affected Bellot's right to a fair trial. None of them indicated that they could not be fair or impartial for any reason.

We, therefore, conclude that any purported dismissal of jurors by the government did not result in plain error.

### C. Jury Instructions

On August 11, 2002, Virgin Islands Police Department Detective Aaron Krigger interviewed Canonier regarding his interactions with Bellot. During the course of their conversation, Canonier informed Detective Krigger that Bellot was in Canonier's garage only once in 2002, and A.C. was not present. At trial, however, Canonier contradicted his August 2002 statement and explained that Ballot was in the garage almost every day throughout 2002. Although the Superior Court admitted Canonier's August 2002 statement into evidence, it denied Bellot's request to instruct the jury that the statement constituted substantive evidence. Instead, the court informed the jury that the statement could only be used for impeachment purposes, not for the truth of its contents. Bellot contends that this instruction limiting the August 2002 statement to impeachment evidence constituted reversible error.

Federal law provides that "[t]he rules governing the practice and procedure of the" Superior Court shall be "governed by local law." 48 U.S.C. § 1611(c). According to Virgin Islands Code, 14 V.I.C. § 19, evidence of an inconsistent prior statement may be admitted as substantive evidence if the witness was given an opportunity at trial to explain the statement. *See Virgin Islands v. Donastorg*, No. ST-10-CR-F109, 2010 WL 3063765, at * 7 (V.I. Super. Ct. Aug. 4, 2010). Here, Canonier's trial testimony was

6

arguably inconsistent with his August 2002 statement, and he was afforded an opportunity during trial to explain the alleged inconsistency. Thus, we conclude that the Superior Court erred when it failed to instruct the jury that it could consider Canonier's August 2002 statement as substantive evidence.

To determine whether the Superior Court's error entitled Bellot to a new trial, we review for harmless error. *United States v. Saybolt*, 577 F.3d 195, 206 (3d Cir. 2009). "The test for harmless error is whether it is highly probable that the error did not contribute to the judgment." *United States v. Vosburgh*, 602 F.3d 512, 540 (3d Cir. 2010) (internal quotations omitted).

After review of the record, it is clear that the Superior Court's failure to instruct the jury that it could consider Canonier's August 2002 statement as substantive evidence was harmless error. Moreover, although the court instructed the jury that it could only consider inconsistent statements for impeachment purposes, its instructions never directly referred to the August 2002 statement. Bellot was also permitted to refer to the statement as substantive evidence during closing argument. Finally, the evidence of Bellot's guilt was overwhelming.

## III. <u>Conclusion</u>

For the foregoing reasons, we will affirm the order of the District Court affirming the judgment of conviction.